[No. 34917-1-I.   Division One.   July 15, 1996.]

CREDIT GENERAL INSURANCE COMPANY, *Appellant*, v.
DESSIE T. ZEWDU, *Defendant*, JOSEPH BLONDO, ET AL.,
*Respondents.*

(

*Jeffrey M. Thomas* and *Perkins Coie*, for appellant.

*David S. Vogel; Arthur D. Swanson, Joanne R. Werner,* and *Arthur D. Swanson, P.S.*; and *David M. Jacobi* and *Wilson, Smith, Cochran & Dickerson*, for respondents.

WEBSTER, J. — A taxicab driver ran over a pedestrian crossing a street, and the taxicab's insurer filed this declaratory judgment. The insurer, Credit General Insurance Co., seeks a judgment declaring the absence of coverage because the policy requires the pre-approval of all taxicab drivers, and it did not pre-approve the driver causing the accident.

Prior to the accident, the insurance commissioner denied Credit General permission to sell the policy because the pre-approved driver clause violated Washington law. Because Credit General sold the policy without appealing the commissioner's disapproval, it failed to exhaust its administrative remedies, and we will not consider its substantive arguments. We construe the policy without the disapproved clause, and affirm the trial court's declaration of coverage.

## I.

## FACTS

On November 18, 1991, Credit General submitted its taxicab liability policy to the forms regulation division of the insurance commissioner's office. The policy, through

its definition of "insured," excluded coverage for drivers who were not "pre-approved" by Credit General. The definition of "insured" was part of a General Change Endorsement, which provided:

> Any driver authorized as a taxicab driver, limousine driver or driver of any other public livery vehicle while operating covered "auto" with your knowledge and consent under your operating authority.* No coverage will apply to any driver newly placed in service after the policy begins until you report that driver to us and we will advise you in writing that he/she is acceptable to us and that he/she is covered under the policy. Coverage on any such driver newly placed in service will become effective as of the date and time we advise you he/she is acceptable and that they are covered by the policy and not before, subject to the·reporting methods outlined and agreed to in the Notification Procedure Outline signed by the insured and the agent prior to coverage being effected under the policy.
>
> *Only such drivers listed as of the date this policy begins, on the driver schedule in the original application signed by you, and who are not otherwise excluded from coverage as of the date this policy begins.

On November 20, 1991, a senior analyst, acting as the commissioner's representative, disapproved the policy:

6. First, your Named Driver Exclusion endorsement is not acceptable. If an excluded driver is operating an insured vehicle, the vehicle may be both uninsured and underinsured. You must provide underinsured motorist coverage when a vehicle is operated by an excluded driver. Please review *First Nat'l Ins. Co. of America. v. Perala*, 32 Wn. App. 527, 648 P.2d 472 [1982] and amend your form.

. . .

7. First, your General Change Endorsement excludes all coverages for drivers newly placed in service until approved by the company. This appears contrary to our Financial Responsibility law. Please explain how this form will work in the context of our Financial Responsibility Law, or withdraw this form.

The analyst also disapproved it because of the method used by Credit General to restrict the policy's scope of coverage: "this form is not a 'general change,' [it] is a significant restriction of coverage. The title should describe what the form does, or it is misleading—in violation of RCW 48.18.110(1)(d)." Credit General did not appeal the analyst's disapproval to the commissioner.[1] And, despite the disapproval, Credit General immediately marketed the policy.

Dessie Zewdu applied for a Credit General taxicab liability policy in June 1992, submitting a list of drivers with his application. Credit General issued the policy. Zewdu did not include Blondo on the initial driver list, nor did he ever seek approval for Blondo.

In January 1993, Blondo, driving a taxicab owned by Zewdu, struck Harry Koff while he was crossing a street in downtown Seattle. Koff died the next day.

Credit General sued Zewdu, Blondo, and Koff's personal representative for declaratory judgment. Zewdu failed to answer and the court entered a default judgment. Blondo, Koff, and Credit General brought cross-motions for summary judgment. The trial court granted summary judgment to Blondo and Koff, entering a declaratory judgment that the pre-approved driver provision did not exclude coverage. It also awarded Blondo attorney fees.

Credit General appealed, and, after oral argument, we requested additional briefing regarding exhaustion of administrative remedies.

## II.
## DISCUSSION
### A.
### Exhaustion Of Administrative Remedies

1. *Agency's Initial Authority To Evaluate and Resolve The Claim.*

---

[1] *See* RCW 48.04.010.

██ Litigants must exhaust administrative remedies before seeking judicial intervention when an agency has initial authority to evaluate and resolve a claim, and the administrative remedy is adequate in relation to the relief sought. *South Hollywood Hills Citizens Ass'n v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984). Credit General's "claim" is that its policy is consistent with Washington's insurance statutes, thereby entitling the policy to enforcement. The commissioner has initial authority to authorize the sale of insurance policies, including the obligation to determine whether policy provisions are consistent with Washington's insurance laws. RCW 48.18.100, 48.18.110(1)(a), WAC 284-02-020(3)(a) . The commissioner exercises this initial authority through the forms regulation division, and an insurer can administratively appeal a disapproval. RCW 48.04.010(1)(b), WAC 284-02-070(1)-(2), RCW 34.05.413. Thus, the commissioner had initial authority to evaluate and resolve Credit General's claim.

2. *Adequacy of Remedy In Relation To Relief Sought.*

The more difficult question concerns the type and adequacy of administrative remedies. Credit General contends that the relief that it seeks—a declaratory judgment binding on the taxicab driver and the deceased pedestrian's estate—is not within the commissioner's authority. And further, that even if Credit General sought and received a favorable determination from the commissioner, the commissioner could not bind this court. From these two points, Credit General reasons that the administrative remedy was inadequate and that pursuit of administrative review was futile.

██ Washington law rejects the simplistic, mechanistic approach to adequacy that Credit General proposes. For even when an administrative remedy is not the precise relief sought, or will not give a litigant "complete relief," the remedy may be adequate for purposes of requiring exhaustion. *Dioxin/Organochlorine Center v. Department of Ecology*, 119 Wn.2d 761, 777, 837 P.2d 1007 (1992)

(pursuit of administrative remedies not inadequate or futile despite absence of injunctive power in agency). The adequacy of an administrative remedy is measured in relation to the claim. *Cf.* W. Andersen, *The 1988 Washington Administrative Procedure Act—An Introduction,* 64 WASH. L. REV. 781, 828 (1989) (discussing RCW 34.05.534).

For example, *State v. Tacoma-Pierce County Multiple Listing Service,* 95 Wn.2d 280, 284, 622 P.2d 1190 (1980), involved an antitrust action by the attorney general against multiple listing services. The listing services contended that the attorney general should have initially proceeded before the Department of Licensing or the Real Estate Commission. Because neither agency had any power to regulate, enjoin, or penalize multiple listing associations, however, the court held the administrative remedy to be inadequate. In other words, an administrative agency lacking authority to make or enforce a decision relevant to the claim cannot provide an adequate remedy.

By contrast, *Retail Store Employees Union, Local 1001 v. Washington Surveying and Rating Bureau,* 87 Wn.2d 887, 558 P.2d 215 (1976), involved an insurance rating bureau that the plaintiffs contended was operating in violation of insurance statutes. An insurance statute provided for complaint directly to the bureau, and subsequent hearing by the commissioner. 87 Wn.2d at 906. Because the commissioner could order the bureau to desist from illegal activities, an adequate administrative remedy existed. 87 Wn.2d at 909. In other words, an administrative agency empowered to entertain the type of claim and enforce its decision can supply an adequate remedy. *Citizens for Clean Air v. Spokane,* 114 Wn.2d 20, 28, 785 P.2d 447 (1990).

This case falls between *Multiple Listing Services* and *Retail Store Employees Union.* The commissioner has authority to decide whether Credit General's policy complies with Washington's statutes and rules, and whether it deceives or misleads purchasers. RCW

48.18.110(a), (c), (d). The commissioner can enforce decisions, and can issue declaratory orders in contested cases. RCW 48.02.080, 34.05.240. In addition, although a commissioner cannot bind the courts, the court appropriately defers to a commissioner's interpretation of insurance statutes and rules. *Bailey v. Allstate Ins. Co.,* 73 Wn. App. 442, 447, 869 P.2d 1110 (1994); *Retail Store Employees Union,* 87 Wn.2d at 898 ("We may place greater reliance than usual upon an administrative statutory interpretation in this case because the Commissioner has been entrusted with very broad discretion and responsibility in the administration of RCW 48.19.170(2)(b) and the other statutes regulating rating organizations"). Unquestionably, the adequacy of the remedy must be measured from the time the administrative remedy was available. In November 1991, Credit General was faced only with the commissioner's disapproval. The disapproval precluded the issuance, use, or delivery of the policy. The administrative appeal procedure, followed by judicial review under the A.P.A., constituted an adequate remedy for Credit General's claim that its policy is consistent with Washington's insurance statutes and rules. The remedy was adequate, even though it would not have afforded Credit General complete relief against Blondo and Koff.

3. *Absence of the Insurance Commissioner From The Action.*

Credit General contends that exhaustion is irrelevant because it does not now seek any review of the commissioner's disapproval and the agency is not a party.

In the usual case, the agency is a party to the lawsuit in which the exhaustion doctrine is applied. *See e.g., Beard v. King County,* 76 Wn. App. 863, 871, 889 P.2d 501 (1995) (police officer who did not apply for promotion failed to exhaust administrative remedies, and could not sue King County for unfair employment practices based on absence of promotion). But when the policies favoring exhaustion are compelling, courts can apply the doctrine to situations in which the underlying decision-maker is not a party.

*Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1245 (7th Cir. 1983).

The policies compelling exhaustion include the commissioner's broad statutory authority to preserve inviolate the integrity of insurance. RCW 48.01.030, 48.02.060(1)-(2). The commissioner's specific powers to approve or disapprove forms assuredly are designed to protect the public. *Progressive Casualty Ins. v. Jester*, 102 Wn.2d 78, 82 n.2, 683 P.2d 180 (1984). Likewise, requiring exhaustion avoids piecemeal attacks by Credit General on individual insureds (one superior court case involving this exact clause has been stayed; Credit General initially litigated a third case, but eventually settled). In short, if Credit General escaped an exhaustion obligation simply by filing a declaratory action in which it did not name the commissioner, then no insurer would attend to the commissioner's adverse decisions, and members of the public would be saddled with the entire burden of proving that policies violated Washington law. That would undermine the legislative purpose of regulating insurance forms and requiring the commissioner's approval prior to issue. Consequently, the absence of the commissioner as a party to this action does not preclude the court from requiring exhaustion.[2]

*4. Requiring Exhaustion When Issues Are Legal, Rather Than Factual.*

Credit General also contends that exhaustion does not apply because its lawsuit involves only legal issues.

In the course of deciding whether to require exhaustion of administrative remedies, the court engages in balancing. *Hollywood Hills*, 101 Wn.2d 68, 74. If a lawsuit presents only issues of law, the court may excuse exhaustion because the agency's usual fact finding task is not implicated, and, in any event, the courts have ultimate

---

[2]We are not applying the A.P.A.'s exhaustion provisions, which address direct appeals, except to note that the A.P.A. provided the mechanism through which Credit General should have appealed the commissioner's decision. *See* RCW 34.05.510. Instead, we apply the judicial doctrine of exhaustion.

authority to interpret statutes. *Retail Store Employees Union*, 87 Wn.2d at 907 n.7 (failure to exhaust administrative remedies will not "necessarily" preclude an action when the lawsuit presents only issues of law). Still, when an agency is charged with interpreting and applying a particular statute, that agency expertise usually assists the court in performing the judicial function. *St. Regis Paper Co. v. Marshall*, 591 F.2d 612, 614, *cert. denied*, 444 U.S. 828 (10th Cir. 1979). Because agency expertise would assist the court in interpreting the statutes applicable to this case, requiring exhaustion is appropriate, even though this case presents legal, rather than factual, issues.

Consequently, we decline to address Credit General's defense of its pre-approved driver clause. Because the commissioner disapproved the clause, and Credit General failed to administratively appeal, we construe the insurance contract without the disapproved portions of the policy. Blondo is an insured driver, despite Zewdu's failure to seek pre-approval from Credit General.

## B.

### Attorney Fees

Blondo seeks appellate attorney fees, relying on *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991). Credit General, citing *Public Utility Dist. No. 1 v. International Ins. Co.*, 124 Wn.2d 789, 814–15, 881 P.2d 1020 (1994), contends that Zewdu's failure to comply with the pre-approved driver endorsement precludes an award of attorney fees.

■ ■ When an insurer unsuccessfully contests coverage, it places its own interest ahead of the insured's. *McGreevy v. Oregon Mutual Ins. Co.*, 128 Wn.2d 26, 39-40, 904 P.2d 731 (1995). The court awards attorney fees to an insured in such circumstances because (1) insurers have disproportionate bargaining power in negotiating the insurance contract, precluding insureds from negotiating a contractual allocation of attorney fees that is just, and (2)

insureds incur litigation expenses solely to compel the insurer's performance. *Olympic Steamship*, 117 Wn.2d at 52–53. Because the court is exercising equitable power, it will refuse an award when the insured breaches express coverage terms that may extinguish the insurer's liability. In *Public Utility Dist. No. 1*, for example, the insured breached a "no action" clause by settling an underlying lawsuit without the insurer's permission. 124 Wn.2d at 802. The court held the insurer liable, but, because of the insured's breach, declined to award fees. 124 Wn.2d at 815.

In this case, by contrast, we have construed the policy to exclude the pre-approved driver provision. Thus, Blondo did not breach an express coverage term. Because he was forced to litigate in order to establish Credit General's liability, and he prevailed on appeal, he is entitled to an appellate attorney fee award.

We affirm the trial court's judgment and we award Blondo reasonable appellate attorney fees. RAP 18.1.

BAKER, C.J., and BECKER, J., concur.

Review denied at 130 Wn.2d 1022 (1997).