[No. 33069-5-II.   Division Two.   February 14, 2006.]

REGENCE BLUESHIELD, *Appellant*, v. THE OFFICE OF THE INSURANCE COMMISSIONER, *Respondent*.

*Timothy J. Parker* and *Jason W. Anderson* (of *Carney Badley Spellman*), for appellant.

*Robert M. McKenna, Attorney General,* and *Elizabeth C. Beusch, Assistant,* for respondent.

¶1 VAN DEREN, A.C.J. — Regence Blueshield appeals the trial court's decision that the Office of the Insurance Commissioner (OIC) was justified when it disapproved of Regence's proposed pharmacy rider, form RBS-56, because the contract did not comply with the diabetes cost reduction act of 1997 (DCRA).[1] Regence argues that (1) annual benefit limits are a permissible cost-sharing provision under the statute's plain language and (2) its statutory interpretation is correct in light of ejusdem generis,[2] legislative history, case law, and other authority. Holding that the proposed pharmacy rider is not a cost-sharing provision as the plain language of the DCRA contemplates, and that it improperly eliminates pharmacy coverage for diabetes treatment, we affirm the OIC's disapproval of Regence's form RBS-56.

## I. FACTS

¶2 Regence provides health care benefit contracts to individuals and groups. In August 2001, Regence submitted a

---

[1] Codified at RCW 48.44.315.

[2] A canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed. BLACK'S LAW DICTIONARY 556 (8th ed. 2004).

proposed pharmacy rider form (RBS-56) to the OIC for approval as required by RCW 48.44.070.[3]

¶3 RBS-56 proposed a less expensive pharmacy plan providing 50 percent prescription coverage for the first $4,000 of annual prescription costs. The plan provided that Regence would match the subscriber's 50 percent copay up to $2,000 per year; meaning, the subscriber would pay $2,000 and Regence would match it. But after the $4,000 cap was met, the costs of all the subscriber's prescriptions (including diabetes supplies) would be paid solely by the subscriber. RBS-56 specifically stated:

> BENEFIT MAXIMUM. Benefits for Prescription Drugs as described below will be provided to an annual maximum of $2,000.
>
> COPAY. The Member will be responsible to pay the Copay percentage specified below for each prescription or refill under the Benefits of this Section.
>
> Approved Pharmacies and Mail Order Service. . . . 50% of the Allowed Amount.
>
> . . . .
>
> PHARMACY BENEFITS. Prescription Drugs and other covered items obtained at an approved pharmacy will be provided after the Member has paid the Copay . . . . Prescription Drugs furnished by an approved pharmacy will be limited to a 34-day supply, except as follows: (1) Certain drugs, including but not limited to . . . diabetes test strips . . . may be limited to a lesser

---

[3] RCW 48.44.070 states:

(1) Forms of contracts between health care service contractors and participating providers shall be filed with the insurance commissioner prior to use.

(2) Any contract form not affirmatively disapproved within fifteen days of filing shall be deemed approved, except that the commissioner may extend the approval period an additional fifteen days upon giving notice before the expiration of the initial fifteen-day period. The commissioner may approve such a contract form for immediate use at any time. Approval may be subsequently withdrawn for cause.

(3) Subject to the right of the health care service contractor to demand and receive a hearing under chapters 48.04 and 34.05 RCW, the commissioner may disapprove such a contract form if it is in any respect in violation of this chapter or if it fails to conform to minimum provisions or standards required by the commissioner by rule under chapter 34.05 RCW.

supply as indicated on the Member's prescription or as determined by the Company.

Administrative Record (AR) at 141-42.

¶4 The OIC disapproved this form and referred the matter to an administrative law judge (ALJ) for a hearing at Regence's request. In support, Regence submitted the declaration of Mary Mauceri, the benefit development manager for Regence. Mauceri stated that many health insurance contracts include annual benefit limits. She cited to limits placed on such things as chemical dependency treatment, skilled nursing facilities, and home health care. Regence also presented evidence that the average RBS-56 enrollee would pay $996.23 in annual prescription drug costs.

¶5 The OIC submitted a declaration from Steve Bieringer, the national advocacy field director for the American Diabetes Association. Bieringer stated that annual prescription costs for diabetics varied greatly and that a cap on benefits would harm those who had to use insulin to manage the disease, as their annual costs for insulin and other diabetes management supplies was closer to $3,300 per year.

¶6 The OIC also submitted a declaration from Donna Dorris, an OIC employee. Dorris stated that benefit caps like the one in RBS-56 were not customary in 1997, when the legislature enacted RCW 48.44.315.[4] Further, she

---

[4] RCW 48.44.315 states in pertinent part:

The legislature finds that diabetes imposes a significant health risk and tremendous financial burden on the citizens and government of the state of Washington, and that access to the medically accepted standards of care for diabetes, its treatment and supplies, and self-management training and education is crucial to prevent or delay the short and long-term complications of diabetes and its attendant costs.

. . . .

(2) All health benefit plans offered by health care service contractors, issued or renewed after January 1, 1998, *shall* provide benefits for at least the following services and supplies for persons with diabetes:

(a) *For health benefit plans that include coverage for pharmacy services, appropriate and medically necessary equipment and supplies, as prescribed by a health care provider*, that includes but is not limited to insulin, syringes,

stated that "annual caps [are not] 'cost-sharing' provisions as that term is commonly understood and used in the health care arena." AR at 260. She stated that copayments, coinsurance, and deductibles are the commonly-understood and accepted cost-sharing methods.

¶7 The ALJ heard arguments in May 2003, and issued an order in August 2003, ruling that the cost-sharing referred to in the DCRA meant "to divide and parcel out in shares; apportion." AR at 152. The ALJ concluded that, while the statute lists three specific methods of cost-sharing (copayments, coinsurance, and deductibles), it does not indicate whether those three methods are exclusive. Furthermore, the statute used the term "may," indicating that it is permissive in nature. AR at 153. And thus, Regence's annual benefit limit fit the meaning of cost-sharing within the statute because it was "essentially the mirror image of a deductible." AR at 153.

¶8 The OIC subsequently rejected the ALJ's determination and issued a final order disapproving RBS-56, finding that it violated the DCRA. It found that:

injection aids, blood glucose monitors, test strips for blood glucose monitors, visual reading and urine test strips, insulin pumps and accessories to the pumps, insulin infusion devices, prescriptive oral agents for controlling blood sugar levels, foot care appliances for prevention of complications associated with diabetes, and glucagon emergency kits.

. . . .

(3) Coverage required under this section may *be subject to customary cost-sharing provisions established for all other similar services or supplies within a policy.*

(4) Health care coverage may not be reduced or eliminated due to this section.

(5) Services required under this section shall be covered when deemed medically necessary by the medical director, or his or her designee, subject to any referral and formulary requirements.

(6) The health care service contractor need not include the coverage required in this section in a group contract offered to an employer or other group that offers to its eligible enrollees a self-insured health plan not subject to mandated benefits status under this title that does not offer coverage similar to that mandated under this section.

(7) This section does not apply to the health benefit plans that provide benefits identical to the schedule of services covered by the basic health plan.

(Emphasis added.)

[a]nnual maximum benefit limits are specifically authorized under some sections of Washington's Insurance Code. The DCRA provides only, however, that *Coverage required under this section may be subject to customary cost-sharing provisions established for all other similar services or supplies within a policy.*

AR at 137. And with the three typical examples of cost-sharing, the plan member is "responsible for a definite, finite, and fairly foreseeable amount of the costs of the necessary health care services." AR at 138.

¶9 Regence appealed to Thurston County Superior Court, which upheld the OIC's final order. The trial court noted that health care service contractors have the option of providing pharmacy coverage and, if they provide it, they must offer benefits for diabetes supplies and equipment.

¶10 Regence appeals.

## II. ANALYSIS

¶11 Regence argues that the OIC erroneously interpreted the DCRA to exclude cost limits as a cost-sharing provision and that annual benefit limits are a permissible cost-sharing method under the statute's plain language because annual limits are (1) within the definition of cost-sharing, (2) consistent with the DCRA's purposes, and (3) consistent with the cost-sharing provisions. It further argues that (1) ejusdem generis, (2) legislative history, (3) case law, and (4) other authorities support its statutorial interpretation. The OIC counters that "[a]n internal maximum benefit limit is not similar to any of the three traditional methods of cost-sharing" and, where the legislature intended to allow both cost-sharing provisions and internal maximums on a mandated benefit, it has stated so expressly in the statutory language. AR at 138.

### A. Standard of Review

¶12 RCW 34.05.570 governs judicial review of an agency order. We may grant relief only if the party challenging the

agency order shows that the order is invalid for one of the reasons specifically set forth in the statute. RCW 34-.05.570(1)(a), (3). Regence asserts that the OIC's final order erroneously interprets and applies the law. RCW 34.05.570(3)(d).

¶13 Statutory construction is a question of law, which we review de novo under the error of law standard. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). The error of law standard "allows the reviewing court to essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law." *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982). "[A]lthough a commissioner cannot bind the courts, the court appropriately defers to a commissioner's interpretation of insurance statutes and rules." *Credit Gen. Ins. Co. v. Zewdu*, 82 Wn. App. 620, 627, 919 P.2d 93 (1996). And we will not weigh the evidence or substitute our judgment regarding witness credibility, for that is the agency's province. *Affordable Cabs, Inc. v. Employment Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004). Furthermore, we accord substantial deference to agency views when an agency determination is based heavily on factual matters, especially factual matters that are complex, technical, and close to the heart of the agency's expertise. *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 396, 932 P.2d 139 (1997). We give great weight to the statutory interpretation laid down by the executive agency charged with its enforcement. *Glaubach v. Regence Blueshield*, 149 Wn.2d 827, 834, 74 P.3d 115 (2003).

¶14 Our obligation is to give effect to legislative intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Where a statute uses plain language and defines essential terms, the statute is not ambiguous. *McFreeze Corp. v. Dep't of Revenue*, 102 Wn. App. 196, 200, 6 P.3d 1187 (2000). Moreover, if the statutory language is clear, the court may not look beyond that language or consider legislative his-

tory but should glean the legislative intent through the statutory language. *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999). In addition, a court " 'cannot add words or clauses to an unambiguous statute' " but must apply the statute as written. *J.P.*, 149 Wn.2d at 450 (quoting *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)); *Enter. Leasing, Inc. v. City of Tacoma Fin. Dep't*, 139 Wn.2d 546, 552, 988 P.2d 961 (1999).

## B. Plain Language of the Statute

¶15 Both Regence and the OIC argue that the statute is unambiguous and that we should only apply its plain language to determine the meaning of "cost-sharing provisions."

¶16 Regence argues that RBS-56's annual benefit limits are within the meaning of "cost-sharing" under RCW 48-.44.315(3) because the benefit limits are commonly used within the insurance industry and are consistent with the DCRA's purpose and its cost-sharing provisions. Specifically, Regence points to RCW 48.43.005(13) which states: " 'Enrollee point-of-service cost-sharing' means amounts paid to health carriers directly providing services, health care providers, or health care facilities by enrollees and *may include* copayments, coinsurance, or deductibles."[5] (Emphasis added.) It argues that although this provision does not specifically state "annual benefit limit," its wording is inclusive and does not specifically exclude benefit limits.[6] Br. of Appellant at 7.

¶17 The OIC counters that the legislature knows how to make a statute broader, if it chooses to do so, and that when read with the preamble to the DCRA, limits on pharmacy

---

[5] Regence notes that chapter 48.44 RCW does not define "cost-sharing" and instead cites to the insurance reform act codified in chapter 48.43 RCW. It also cites WAC 284-43-130(8), which has the same definition as RCW 48.43.005(13).

[6] Regence and the OIC offered opposing testimony about whether annual benefit limits are considered customary cost-sharing methods.

coverage for diabetics is contrary to the statutory intent. Further, as "an administrative agency charged with administering a special field of law and endowed with quasi-judicial functions because of its expertise in that field, [OIC's] construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review." Br. of Resp't at 6-7.

¶18 We agree with the OIC that we defer to the commissioner's interpretation of insurance statutes if the OIC's statutory interpretation reflects a plausible construction of the statute's language and is not contrary to legislative intent. *Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs.*, 82 Wn. App. 495, 518, 919 P.2d 602 (1996).

¶19 We review the OIC's interpretation of the DCRA, keeping in mind that we should give effect to all the statutory language. *C.J.C.*, 138 Wn.2d at 708. And to ensure proper construction, we should consider and harmonize the statutory provisions in relation to each other. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 560, 14 P.3d 133 (2000). We will "avoid readings of statutes that result in unlikely, absurd, or strained consequences." *Glaubach*, 149 Wn.2d at 833. We favor interpretation that is consistent with the spirit or purpose of the enactment rather than a literal reading that renders the statute ineffective. *Glaubach*, 149 Wn.2d at 833.

## 1. DCRA

¶20 We review Regence's form RBS-56 under the DCRA, which mandates that pharmacy coverage not limit or exclude diabetic supplies. Regence points to other medical conditions where annual policy limits are allowed, but it fails to recognize that none of those conditions is one in which the legislature mandates coverage. While contract providers can create such limits for ordinary prescriptions,[7]

---

[7] *See* RCW 48.43.041(1)(b); RCW 48.44.320(2)(a); WAC 284-44-040(1).

the legislature clearly stated that with regard to treatment of diabetes:

> The legislature finds that diabetes imposes a significant health risk and tremendous financial burden on the citizens and government of the state of Washington, and that access to the medically accepted standards of care for diabetes, *its treatment and supplies* . . . is crucial to prevent or delay the short and long-term complications of diabetes and its attendant costs.

RCW 48.44.315 (emphasis added).

¶21 The legislature requires that every offered pharmacy plan cover "pharmacy services, appropriate and medically necessary equipment and supplies, as prescribed by a health care provider" for diabetes treatment. RCW 48.44.315(2)(a). This coverage may be subject to customary cost-sharing provisions established for all other similar services or supplies within a policy. RCW 48.44.315(3). But "[h]ealth care coverage may not be reduced or eliminated due to this section." RCW 48.44.315(4).

¶22 This language is not ambiguous. The statute forbids contract providers from eliminating pharmacy coverage for medically necessary diabetes equipment and supplies that a health care provider deems appropriate to control a subscriber's diabetes. Thus, we need not review extrinsic evidence to interpret this portion of the statute, and we do not engage in other means of statutory interpretation as Regence suggests. *See, e.g., C.J.C.*, 138 Wn.2d at 708.

### 2. Cost-Sharing Methods

¶23 Furthermore, even if the statute's reference to cost-sharing provisions was ambiguous, we accord great weight to the interpretation by a reviewing agency with expertise in the area, so long as its interpretation does not conflict with legislative intent. *Pub. Util. Dist. No. 1 of Pend Orielle County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002).

¶24 We interpret Regence's form RBS-56 in light of the legislative intent and the statutory language of RCW 48-.44.315. *See, e.g., C.J.C.*, 138 Wn.2d at 708.

¶25 "It is well established that the use of 'may' in a statute indicates that the provision is permissive and not binding, while the use of 'shall' indicates a mandatory obligation." *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 437, 90 P.3d 37 (2004). Here, the term "may," referring to customary cost-sharing methods, indicates that cost-sharing provisions are allowed in policies offering pharmacy coverage for diabetes supplies. RCW 48.44.315(3).

¶26 The DCRA does not define "customary cost-sharing" provisions. Br. of Resp't at 10. But the Insurance Code[8] and regulations describe "cost-sharing" in terms of copayments, coinsurance, and deductibles.[9] And these terms fall fully within the OIC's expertise.

¶27 Regence's proposed pharmacy coverage form RBS-56 does not share any of the characteristics of deductibles, copayments, or coinsurance. These three methods create a finite and predictable annual expenditure for the subscriber (deductible) or they assure that the subscriber and the insurance company share in all annual pharmacy expenditures (copayments and coinsurance). While a benefit cap may have some characteristics of cost-sharing, in that the insurer pays 50 percent of the first $4,000 of pharmacy charges in any one year, it differs significantly from the three broadly recognized and identified cost-sharing methods. A benefit cap exposes the insured to unknown and limitless liability when the upper coverage limit in the policy is reached. At that upper limit, form RBS-56 eliminates diabetes coverage and violates the clear legislative intent of RCW 48.44.315(4). Thus, giving the OIC's interpretation great weight, as we must, and effect-

---

[8] Title 48 RCW.

[9] *See, e.g.*, RCW 48.21.200(2) (reduction or refusal of benefits on the basis of other existing coverage refers to *copayments, deductibles, and other similar cost-sharing arrangements*) (emphasis added); RCW 48.43.093(1)(c) (emergency services may "be subject to applicable copayments, coinsurance, and deductibles. . . ."); RCW 48.66-.070 (medicare supplemental insurance policies "must provide that benefits designed to cover cost-sharing amounts will . . . coincide with . . . medicare deductible amount and copayment percentage factors."); *see also* WAC 284-43-250(5), -822(2)(c).

ing the legislature's express purpose of ensuring diabetes coverage, we hold that the statute allows cost-sharing only in the form of deductibles, copayments, or coinsurance.

¶28 We hold that the OIC's interpretation of the DCRA comports with the legislative purpose to avoid the costly consequences of failing to adequately treat diabetes. Because we agree with the OIC that Regence's proposed policy RBS-56 does not offer a cost-sharing plan allowed under the DCRA, but instead eliminates coverage for diabetes treatment supplies, contrary to the direct requirements of the statute, we do not address Regence's remaining arguments.

¶29 We affirm the trial court and OIC's final order issued April 6, 2004, disapproving Regence's proposed policy form RBS-56.

HOUGHTON and PENOYAR, JJ., concur.