# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCOTT B. OSBORNE, Personal Representative of the Estate of Barbara Hagyard Mesdag, | No. 50762-5-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF REVENUE OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Joseph Mesdag died in 2002 and his estate created a qualified terminable interest property (QTIP) for the benefit of his surviving spouse, Barbara Hagyard Mesdag.[1] When Barbara died in 2007, the applicability of Washington estate tax to QTIP was in a state of confusion. After multiple Supreme Court decisions and new legislation, we concluded in an earlier decision in this case that the Estate owed estate tax on the QTIP and remanded to the Department of Revenue (DOR) for a determination of whether the Estate additionally owed interest on the portion of the estate tax attributable to QTIP.

On remand, DOR denied the Estate a refund for the interest it paid on the QTIP estate tax. The trial court affirmed. The Estate appeals, arguing that estate tax on the QTIP did not become "due" until the legislature amended the statute in 2013 and that DOR erred by assessing interest

---

[1] We refer to Joseph Mesdag and Barbara Hagyard Mesdag by their first names. We intend no disrespect.

on tax it paid in 2010, before the tax was "due." We agree. Therefore, we reverse and remand to DOR for it to refund the Estate's overpaid taxes along with interest.

FACTS

Joseph died in 2002 and his estate created a QTIP for the benefit of his surviving spouse, Barbara. A QTIP is a trust "created by a deceased spouse" that "gives the surviving spouse a life interest in the income or use of trust property." *In re Estate of Hambleton*, 181 Wn.2d 802, 809, 335 P.3d 398 (2014). A QTIP can "be transferred tax free without granting the surviving spouse total control." *In re Estate of Bracken*, 175 Wn.2d 549, 555, 290 P.3d 99 (2012) *superseded by statute*, LAWS OF 2013, 2d Spec. Sess., ch. 2 (*Bracken* amendment), *as recognized in Hambleton*, 181 Wn.2d 802. Effectively, "the estate of the first spouse gets a full marital deduction, yet the property does not escape ultimate taxation" because it will eventually be taxed upon the death of the surviving spouse. *Bracken*, 175 Wn.2d at 556.

Barbara died on July 4, 2007, and her Estate filed its Washington Estate and Transfer Tax Return on October 6, 2008. The Estate did not pay any tax on the QTIP. As a result, DOR issued a deficiency notice for additional taxes owed on the value of the QTIP. On February 26, 2010, the Estate paid taxes under protest on the QTIP property, plus interest accrued between October 6, 2008 and the date of payment. The Estate then applied for a tax refund which DOR denied.

The Estate appealed the denial of its refund to the superior court, which stayed the case pending the Supreme Court's resolution of *Bracken*, 175 Wn.2d 549. After *Bracken* decided that no estate tax was owed on QTIP, the superior court ruled in favor of the Estate and DOR appealed to this court. We stayed the case pending the Supreme Court's resolution of *Hambleton*, 181 Wn.2d 802.

2

Once *Hambleton* issued, we applied its reasoning to the Estate's appeal and ruled that the Estate was liable for estate tax on the QTIP. *Osborne v. Dep't of Revenue*, No. 44766-5-II, slip op. at 6 (Wash. Ct. App. Aug. 11, 2015) (unpublished), http://www.courts.wa.gov/opinions/. However, we did not resolve whether the Estate also had to pay interest on the QTIP accrued between 2008, when the estate tax became due, and 2010, when the Estate paid the tax under protest. *Osborne*, No. 44766-5-II, slip op. at 5-6. Instead, we remanded to DOR to determine whether the Estate owed interest. *Osborne*, No. 44766-5-II, slip op. at 6.

DOR concluded that the Estate was not entitled to a refund on the interest it had paid. The Estate appealed the decision to the superior court, arguing that the estate tax on the QTIP had not become "due" until the legislature amended the statute in 2013 and thus, that it had not owed any tax in 2008 when it paid tax on the rest of the estate property. The superior court affirmed DOR's decision and the Estate appealed to this court.

## ANALYSIS

### I.    LEGAL PRINCIPLES

DOR's denial of a refund request and demand for interest is "other agency action" under the Administrative Procedure Act (APA). RCW 34.05.570(4); *Wells Fargo Bank, NA v. Dep't of Revenue*, 166 Wn. App. 342, 360-61, 271 P.3d 268 (2012). We reverse DOR's decision if it was unconstitutional, outside DOR's statutory authority, or arbitrary and capricious. RCW 34.05.570(4)(c). The party challenging agency action has the burden of demonstrating the invalidity of the action. *Beatty v. Fish & Wildlife Comm'n*, 185 Wn. App. 426, 443, 341 P.3d 291 (2015).

We review whether the agency erroneously interpreted or applied the law under the error of law standard. *Beatty*, 185 Wn. App. at 443. When applying this standard, we "may substitute

[our] own judgment for that of the [agency], although [we] must give substantial weight to the agency's view of the law it administers." *Beatty*, 185 Wn. App. at 443. When reviewing administrative action, we sit in the same position as the superior court and apply APA standards directly to the agency record. *Thomas v. Emp't Sec. Dep't*, 176 Wn. App. 809, 812, 309 P.3d 761 (2013).

We review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). In interpreting statutes, we determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. If a statute's meaning is plain on its face, we give effect to that meaning as an expression of legislative intent. *Blomstrom v. Tripp*, 189 Wn.2d 379, 390, 402 P.3d 831 (2017).

If, after the plain meaning inquiry, "the statute remains ambiguous or unclear, it is appropriate to resort to canons of construction and legislative history." *Blomstrom*, 189 Wn.2d at 390. If the statute "uses plain language and defines essential terms, the statute is not ambiguous." *Regence Blueshield v. Office of the Ins. Comm'r*, 131 Wn. App. 639, 646, 128 P.3d 640 (2006). "A statute is ambiguous if 'susceptible to two or more reasonable interpretations,' but 'a statute is not ambiguous merely because different interpretations are conceivable.'" *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

We "avoid [a] literal reading of a statute which would result in unlikely, absurd, or strained consequences." *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of* Eagles, 148 Wn.2d 224, 239, 59 P.3d 655 (2002). We "strictly interpret[ ] ambiguities in statutes imposing taxes in favor of the taxpayer." *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 636-37, 946 P.2d 409 (1997).

4

II.     WASHINGTON ESTATE TAX

In 2005, the legislature amended the Washington estate tax in light of changes to the federal estate taxation scheme. LAWS OF 2005, ch. 516, § 1. The new law imposed an estate tax on "every transfer of property located in Washington" and applied it prospectively but not retroactively. *Bracken*, 175 Wn.2d at 559 (quoting RCW 83.100.040(1)).

In 2012, the Supreme Court in *Bracken* interpreted the new taxation scheme to provide an exception for QTIP trusts created by people who died prior to 2005, but whose surviving spouses died after 2005. 175 Wn.2d at 553. The QTIP had been "transferred" by the first spouse prior to passage of the purely prospective tax and no "transfer" of QTIP property occurred upon the death of the surviving spouse. *Bracken*, 175 Wn.2d at 566-67. Accordingly, under the 2005 law as interpreted by *Bracken*, such QTIP trusts would never be subject to any Washington estate tax.

In 2013, in response to *Bracken,* the legislature amended the estate tax. LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1. The legislature "broadened the meaning of 'transfer' to its 'broadest possible meaning consistent with established United States supreme court precedents'" and intended the amendments to "'apply both prospectively and retroactively to all estates of decedents dying on or after May 17, 2005.'" *Hambleton*, 181 Wn.2d at 813-14 (quoting LAWS OF 2013, 2d Spec. Sess., ch. 2, §§ 1(5), 9.

The legislature found that *Bracken* created "an inequity never intended by the legislature because unmarried individuals did not enjoy any similar opportunities to avoid or greatly reduce their potential Washington estate tax liability" and also may have created "disparate treatment between QTIP property and other property transferred between spouses that is eligible for the marital deduction." LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1(4). The Supreme Court affirmed the legislature's authority to retroactively amend the estate tax in *Hambleton*. 181 Wn.2d at 836.

5

III.     ESTATE TAX DUE DATE

The Estate contends that estate tax on the QTIP did not become "due" until the legislature passed the *Bracken* amendment in 2013. Because the tax was not actually due in 2008, pursuant to *Bracken*, it contends that DOR lacked statutory authority to collect interest accrued between 2008 and 2010. We agree.

DOR may collect interest on overdue estate tax. RCW 83.100.070. In this case, the parties dispute on what date the tax on the QTIP came "due" and thus began accruing interest. The Estate contends the tax did not come "due" until the legislature enacted the *Bracken* amendment in 2013, while DOR contends that it came due along with the rest of the estate tax in 2008. DOR's interpretation would begin imposing interest on the Estate five years before the legislature enacted the *Bracken* amendment. Although the expressly retroactive statute imposed liability on estates of decedents who died as early as 2005, it did not expressly make such taxes "due" in the past.

Washington estate tax bases the due date for required returns on the federal estate tax scheme. RCW 83.100.050. It requires persons filing a required estate tax to file "on or before the date the federal return is required to be filed," including any extensions. RCW 83.100.050(2)(a). Regulations specify that the Washington estate tax return is due nine months after the date of the decedent's death. WAC 458-57-135(3)(a). However, the tax is imposed only on "transfers of the taxable estate" which, in 2008, did not include QTIP. WAC 458-57-015.

At the time of Barbara's death, Washington's estate taxation scheme did not tax QTIP because no "transfer" occurred at the death of the QTIP-receiving spouse. *Bracken*, 175 Wn.2d at 575-76. "It is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it." *Johnson v. Morris*, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976). "In other words, there is no

6

'retroactive' effect of the court's construction of a statute; rather, once the court has determined the meaning, *that is what the statute has meant since its enactment*." *Johnson*, 87 Wn.2d at 928. *Bracken* held that, because no "transfer" occurred on the death of the surviving beneficiary of a QTIP, the 2005 estate tax did not impose any taxation on QTIP. 175 Wn.2d at 566-67. Under *Bracken*, the estate tax did not apply to QTIP at any point from when it was drafted in 2005 until the *Bracken* amendment in 2013.

However, the *Bracken* amendment has express retroactive application and has been approved by the Supreme Court. *Hambleton*, 181 Wn.2d at 836. In the *Bracken* amendment, the legislature stated:

> [T]he legislature finds that it is necessary to reinstate the legislature's intended meaning when it enacted the estate tax, restore parity between married couples and unmarried individuals, restore parity between QTIP property and other property eligible for the marital deduction, and prevent the adverse fiscal impacts of the Bracken decision by reaffirming its intent that the term "transfer" as used in the Washington estate and transfer tax is to be given its broadest possible meaning consistent with established United States supreme court precedents, subject only to the limits and exceptions expressly provided by the legislature. . . .
>     As curative, clarifying, and remedial, the legislature intends for this act to apply both prospectively and retroactively to estates of decedents dying on or after May 17, 2005.

LAWS OF 2013, 2d Spec. Sess., ch. 2, § 1(5), (6).

When the legislature makes clear that an act "is intended to apply retroactively, 'an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.'" *Hambleton*, 181 Wn.2d at 822 (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995)).

*Hambleton* expressly upheld the retroactive effect of the *Bracken* amendment to numerous constitutional challenges, including separation of powers, due process, impairment of contracts,

and uniformity of taxation. 181 Wn.2d at 823, 829, 831-32. However, retroactive application of the statute is not inconsistent with a due date as of the statute's enactment in 2013. Making the tax "due" up to eight years before its enactment, inconsistent with the statutory scheme as it existed at the time, would be absurd and inequitable and cannot be what the legislature intended.[2] Beginning accrual of interest in 2008 would punish the Estate for failing to pay an obligation that it had no way of predicting and was in fact inconsistent with the taxation scheme in place at the time.

We interpret the *Bracken* amendment consistent with *Hambleton* to apply retroactively to all estates of persons dying on or after May 17, 2005. However, the legislature cannot have intended to make this tax due years before its own enactment. Accordingly, the tax came due when the legislature passed the amendment in 2013 and could not begin accruing interest before that date.

The Estate is entitled to a refund of the interest it paid in 2010.

IV.    INTEREST ON INTEREST

In addition to recovering the interest the Estate already paid to DOR, the Estate also seeks interest on the interest from the date of its payment until passage of the *Bracken* amendment, when it contends the payment became "due." The Estate is entitled to this interest.

If DOR determines that a person has overpaid the estate tax due, it must refund the amount of the overpayment, "together with interest." RCW 83.100.130(1). The statute provides an interest

---

[2] DOR brings our attention to a federal case that ruled taxpayers "liable for interest on . . . underpayments, even though the payments were proper when made" and that "[t]he congressional understanding was that interest is payable on retroactive tax increases unless Congress forgives it." *Brown & Williamson, Ltd. v. United States*, 688 F.2d 747, 749-50 (Ct. Cl. 1982). We do not find *Brown & Williamson* persuasive and we choose not to follow it.

rate computed at the same rate as interest DOR assesses for overdue payments and "shall be refunded from the date of overpayment until the date the refund is mailed." RCW 83.100.130(2).

Because the Estate overpaid its estate tax when it paid interest accrued between 2008 and 2010, it should receive its refund "together with interest" on the overpaid amount, as mandated by statute.

## CONCLUSION

The legislature has authority to issue a retroactively applicable tax. However, it cannot have intended to make such a tax come due and begin accruing interest as early as eight years before its own enactment. We conclude that, while the *Bracken* amendment applies to the estates of all persons dying on or after 2005, such taxes came "due" in 2015 at the time the legislature passed the amendment and not earlier. Accordingly, we reverse and remand to DOR for it to refund the Estate the interest it paid in 2010 and interest on that interest, consistent with RCW 83.100.130(1).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Sutton, J.

9