## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of Parenting and Support of: | No. 82665-4-I |
| C.A.S., | DIVISION ONE |
|         Minor Child. | PUBLISHED OPINION |
| LUCAS STOCKS, | |
|         Respondent, | |
|    and | |
| CHRISTY PORTER, | |
|         Appellant. | |

MANN, J. — Christy Porter appeals the trial court's final parenting plan. Porter argues that the trial court abused its discretion in failing to enter a finding that Lucas Stocks had a history of domestic violence under RCW 26.09.191(1). As a result, Porter contends, the trial court erred in requiring mutual decision-making and nonjudicial dispute resolution. Because RCW 26.09.191(1) is nondiscretionary, we agree. We reverse and remand for entry of a finding of a history of domestic violence as to Stocks and a parenting plan that complies with RCW 26.09.191(1).

No. 82665-4-I/2

I.

Porter and Stocks met in late 2015 and had a daughter, C.A.S., in August 2016. The parties characterize their relationship as "on and off" throughout. In August 2018, Stocks petitioned for a parenting plan. C.A.S.'s primary residence was with Porter and Stocks had visitation rights. Stocks lives in Seattle and Porter lives in Walla Walla. The parties each filed proposed parenting plans as required by RCW 26.09.181. Porter sought a finding that Stocks has a history of domestic violence and requested sole decision-making authority.

An eight-day bench trial was held between January and March 2021. Both parties accused the other of abuse. The e-mails and text messages in the record revealed a contentious relationship over the parenting of C.A.S. The trial court also received evidence of multiple historical incidents of domestic violence by Stocks.

In 2003, Stocks's former girlfriend accused him of grabbing her "by the chin and the back of her head and [telling] her" he was "gonna snap [her] neck" and that he was "gonna kill [her]." No-contact orders were issued against Stocks for the protection of the former girlfriend and her child. Later that year, Stocks pleaded guilty to two counts of willful violation of the no-contact orders when he reportedly struck his former girlfriend with the back of his hand and strangled her violently enough to cause her to vomit. She also stated that Stocks assaulted her frequently following their break-up. Stocks pleaded guilty to two misdemeanor counts and was sentenced to nine months in prison.

Stocks later pleaded guilty to two felony counts of violation of a no-contact order resulting from an incident in December 2003. There, a girlfriend accused Stocks of punching her in the face causing bleeding to her nose and he threatened to kill her if

-2-

No. 82665-4-I/3

she called 911. She stated that Stocks made numerous threats to kill her and indicated he continued to harass and intimidate her since he was released from prison following his prior violations of the no-contact ordered issued for her protection. She also stated that Stocks threatened to "bury [her] in the mountains where [she'd] never be found."

From 2003 to 2005, Stocks completed a court-ordered domestic violence offender program at Sound Mental Health. In 2010, Stocks was convicted of assaulting another girlfriend. While Stocks later denied an assault occurred, in his 2010 intake paperwork for domestic violence and mental health assessment, he admitted that he committed physical violence and threatened to kill his girlfriend. In September 2010, Stocks entered a court ordered domestic violence offender program and was discharged without completion in October 2012.

The trial court received a written evaluation and testimony from a court appointed Family Court Services (FCS) evaluator. The FCS evaluator recommended imposing an RCW 26.09.191(1) "history of acts of domestic violence" restriction on Stocks. The evaluation concluded that because of Stocks's history of domestic violence, Porter should receive sole decision-making authority:

> FCS has considered the parties' allegations of abuse from each other and finds that neither produced personal evidence on its own that warrants an RCW 26.09.191 restriction for domestic violence. However, the mother has provided examples of the father's coercive control and has expressed fear of him. Considering that the father has six convictions for domestic violence, with one occurring after he attended a full domestic violence offender program, he should receive an RCW 26.09.191 restriction for a history of domestic violence. Consequently, the mother should receive sole decision-making.

On March 16, 2021, the trial court issued its oral ruling. The court found that both parties alleged domestic violence, including physically abusive and violent

-3-

No. 82665-4-I/4

behavior, as well as controlling behavior towards each other. The court found that there was "no credible corroborating evidence provided as to who is or has been the main aggressor in their relationship."

The trial court found that Stocks has "has a history of domestic violence, which includes misdemeanor convictions for assault and violation of a no-contact order. Stock's last domestic violence-related conviction was in 2010." The trial court also acknowledged the FCS evaluator's recommendation that Stocks should receive an RCW 26.09.191 restriction for history of domestic violence and that Porter should have sole decision-making. The court, however, disagreed with the recommendation:

> The Court disagrees with Liepelt's recommendation of 191 restrictions on Stocks due to his domestic violence history. His last conviction was in 2010, eleven years ago, and there was no credible evidence that Stocks continues to engage in a pattern of domestic violence. Therefore, the Court will not impose domestic violence 191 restrictions on Stocks.

Addressing abusive use of conflict, the court found significant animosity between the two parents:

> It is apparent that there is a lot of animosity between the two parents, and they are unable to have a meaningful conversation about simple things like whether or not [C.A.S.]'s constipated or is having issues with her potty training. This animosity is exhibited by both parties, not just one.

> The Court read a significant amount of emails and text exchanges between the two of them. Both exhibited extreme controlling, antagonistic and disrespectful tone.

As a result, the trial court found "abusive use of conflict by both parents, which creates a danger of serious damage to [C.A.S.]'s psychological development."

On March 24, 2021, the trial court entered the final parenting plan. Unlike its oral ruling, the parenting plan did not find that Stocks had a history of domestic violence.

-4-

No. 82665-4-I/5

While it found an abusive use of conflict, it attributed it to both parents. As a result, the trial court did not impose RCW 26.09.191 limitations on either parent. The parenting plan ordered joint decision-making for C.A.S. The trial court concluded that dispute resolution was to be handled through mediation by mutual agreement of the parties. Porter unsuccessfully sought reconsideration.

Porter appeals.

II.

A.

A trial court's decision on matters affecting the welfare of children, such as parental decision-making, is ordinarily reviewed for an abuse of discretion. Caven v. Caven, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A decision is manifestly unreasonable if it is outside the range of acceptable choices considering the facts and applicable legal standard. In re Parenting & Support of L.H., 198 Wn. App. 190, 194, 391 P.3d 490 (2016).

B.

Porter argues that because Stocks has a history of domestic violence, the trial court was required under RCW 26.09.091(1) to limit his decision-making and require court involvement in dispute resolution. Stocks on the other hand argues that the language "history of domestic violence" in RCW 26.09.191 is ambiguous because it can be reasonably interpreted in more than one way. Thus, he contends, the trial court did

No. 82665-4-I/6

not err in interpreting the statute to exclude prior, remote acts of domestic violence. We agree with Porter.

Statutory construction is a question of law that we review de novo. In re Matter of Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.2d 492 (2016). "The purpose of our inquiry is to determine legislative intent and interpret the statutory provisions to carry out its intent." T.A.W., 186 Wn.2d at 840. We begin with the statute's plain language. "If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction." HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). "To ascertain the statute's plain meaning, we may examine (1) the entirety of the statute in which the disputed provision is found, (2) related statutes, or (3) other provisions within the same act." T.A.W., 186 Wn.2d at 840 (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

In applying rules of statutory construction to the unambiguous language of a statute, "[t]he court must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute." Caven, 136 Wn.2d at 806. "[A] court 'cannot add words or clauses to an unambiguous statute' but must apply the statute as written." Blueshield v. State Off. of Ins. Comm'r, 131 Wn. App. 639, 647, 128 P.3d 640 (2006) (quoting State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). "A statute is ambiguous if it can be reasonably interpreted in more than one way, but it is not ambiguous simply because different interpretations are conceivable." Kilian v. Atkinson, 147 Wn.2d 16, 20-21, 50 P.3d 638 (2002).

RCW 26.09.191(1) requires that certain limitations be imposed in a parenting plan where there is a history of domestic violence:

-6-

No. 82665-4-I/7

> The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in . . . a history of acts of domestic violence as defined in RCW 26.50.010(3).[1]

By using the word "shall" we presume that the legislature created a duty rather than conferring discretion, unless the statute reflects a contrary intent. State v. Bartholomew, 104 Wn.2d 844, 848, 710 P.2d 196 (1985). No contrary intent is apparent. On its face the statute affords no discretion, it prohibits trial courts from requiring mutual decision-making or nonjudicial dispute resolution where there is a history of domestic violence.

Interpreting RCW 26.09.191(1) as nondiscretionary, is consistent with other provisions of the same statute. When the legislature used certain language in one provision of a statute, and omits the same language in another, we presume it intended a difference in the two provisions. State v. Beaver, 148 Wn.2d 338, 343, 60 P.3d 586 (2002). RCW 26.09.191(2) addresses limitations on residential time. Like RCW 26.09.191(1), under RCW 26.09.191(2)(a)(iii), a parent's residential time with the child "shall" be limited if it is found that the parent engaged in "a history of acts of domestic violence." But unlike RCW 26.09.191(1), RCW 26.09.191(2)(n) grants discretion to the trial court not to apply the limitations in RCW 26.09.191(2)(a):

> If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection, or if the court expressly finds that the

---

[1] Former RCW 26.50.010(3) defines domestic violence as: "Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner." This section was repealed and replaced by RCW 7.105.010, effective July 1, 2022. RCW 7.105.010 adds "nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control" to the opinition of domestic violece, otherwise, the definition remains the same.

No. 82665-4-I/8

> parent's conduct did not have an impact on the child, then the court need
> not apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection.

Thus, a trial court has discretion not to impose residential restrictions where it finds that the conduct is unlikely to recur or did not have an impact on the child. Notably, RCW 26.09.191(1) does not provide the same discretion when addressing mutual decision-making or dispute resolution. The difference between RCW 26.09.191(1) and RCW 26.09.191(2) supports a nondiscretionary reading of RCW 26.09.191(1).[2]

In L.H., Division Two of this court agreed that restrictions on a parent's decision-making are mandatory under RCW 26.09.191(1), if the trial court finds that a parent has a history of domestic violence. 198 Wn. App. at 194. See also Caven, 136 Wn.2d at 808 (affirming court of appeals conclusion that "the discretion of the trial court in determining parental decision-making is restricted by circumstances stated in [RCW 26.09.191(1)]"); In re Marriage of Mishko, 23 Wn. App. 2d, 571, 577-78, 20, 519 P.3d 240 (2022) (the trial court erred by failing to make finding of a history of act of domestic violence "such that .191 restrictions on decision-making were required"). In L.H., the trial court noted at the conclusion of trial that "there has been prior domestic violence [and that] there have been some other issues here." 198 Wn. App. at 195. The trial court declined, however, to enter a finding of a history of domestic violence because it

---

[2] Because the language of RCW 26.09.191(1) is unambiguous, we need not resort to legislative history. Caven, 136 Wn.2d at 807-808. But we note that the legislative history also supports the legislature's intent to make the restrictions for decision-making and dispute resolution in RCW 26.09.191(1) mandatory. RCW 26.09.191 was first adopted in 1987 as Section 10 of SHB 48. LAWS OF 1987, ch. 460, § 10. When first proposed, Section 10(1) required limitation on decision-making, dispute resolution, and residential time where one party had a history of domestic violence. Section 10(2), however, granted discretion to the trial court to eliminate the limitations if it found "that the possibility that such conduct will recur is so remote that it would not be in the child's best interest to apply the limitation." SHB 48, Section 10(1) and (2). Before final passage, however, Section 10 was revised to remove the discretion for mutual decision-making and dispute resolution, and allowing it only for residential time. SHB 48, Section 10(1) and (2).

No. 82665-4-I/9

would "'hate to have this record follow him around like some ghost'" and that such findings would "'haunt him, and [it did not] think that's necessary.'" L.H., 198 Wn. App. at 195. This court reversed, concluding "[s]uch reasoning was untenable as the trial court applied an incorrect standard and thus abused its discretion." The court reversed and remanded for entry of a finding of a history of domestic violence and a parenting plan that complied with RCW 26.09.191. L.H., 198 Wn. App. at 195.

Here, the trial court correctly stated in its oral ruling, "[t]he father has a history of domestic violence, which includes misdemeanor convictions for assault and violation of a no-contact order."[3] This finding is supported by substantial evidence. Stock has six convictions for domestic violence, including a conviction post domestic violence offender treatment. The trial court also correctly recognized that the FCS evaluator recommended restrictions because of Stocks's previous domestic violence convictions, including one after attending a domestic violence offender program. But the trial court declined to impose restrictions, reasoning that Stocks's "last conviction was in 2010, eleven years ago, and there was no credible evidence that Stocks continues to engage in a pattern of domestic violence. Therefore, the Court will not impose domestic violence 191 restrictions on Stocks." As in L.H., the trial court's reasoning based on remoteness was untenable as the trial court applied an incorrect legal standard. RCW 26.09.191(1) does not grant the trial court discretion to deviate from the mandatory limitations on decision-making and dispute resolution. The trial court abused its discretion.

---

[3] An oral ruling has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment. Ferree v. Doric Co., 62 Wn.2d 561, 567, 383 P.2d 900 (1963). The final parenting plan and order incorporated by reference the court's oral ruling.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82665-4-I/10

We reverse and remand for entry of a finding of a history of domestic violence as to Stocks and a parenting plan that complies with RCW 26.09.191(1).

_Mann, J._

WE CONCUR:

_Coburn, J._          _Andrus, C.J._

-10-