966 P.2d 1247 (1998)
136 Wash.2d 800
In re the Marriage of Carolann M. CAVEN, Respondent,
v.
Daniel W. CAVEN, Petitioner.
No. 66199-5.
Supreme Court of Washington, En Banc.
November 12, 1998.
Reconsideration Denied December 23, 1998.
William A. Buchanan, Redmond, Catherine Smith, Seattle, for Petitioner.
H. Michael Fields, Seattle, for Respondent.
SMITH, J.
Petitioner Daniel W. Caven seeks review of a decision of the Court of Appeals, Division I, which reversed and remanded to the King County Superior Court a ruling interpreting the phrase "a history of acts of domestic violence" in RCW 26.09.191(1)(c) as being modified by the phrase "an assault or sexual assault which causes grievous bodily harm or the fear of such harm," and granting both parents mutual decision-making under a parenting plan. We granted review. We affirm.

*1248 QUESTION PRESENTED

The principal issue in this case is whether the portion of the sentence containing two phrases "a history of acts of domestic violence... or an assault or sexual assault which causes grievous bodily harm or the fear of such harm" in RCW 26.09.191(1)(c) modify each other or constitute alternatives.[1] A related issue is whether the trial court had discretion to determine mutual decision-making rights under a parenting plan if any of the circumstances recited in RCW 26.09.191(1)(c) were present in the case.

STATEMENT OF FACTS
Respondent CarolAnn M. Caven[2] and Petitioner Daniel W. Caven were married on May 13, 1989 in Seahurst, King County, Washington.[3] On January 30, 1995, Respondent served Petitioner with a summons and petition for dissolution of marriage.[4] Two children, ages 30 months and 6 months, were born of the marriage.[5]
On December 20 and 21, 1995, the parties participated in mediation conducted by Lowell K. Halverson.[6] Issues not resolved in mediation were addressed at trial before the Honorable Carol A. Schapira, King County Superior Court, during the period February 12-15, 1996.[7] Judge Schapira in oral remarks concluded that Petitioner Daniel W. Caven had engaged in acts of domestic violence against Respondent CarolAnn M. Caven which included "property destruction or the turning over of large objects, a bookcase, a couch, putting a hand through a wall, moving the mattress, picking up a corner of the mattress and Ms. Caven tumbles [sic] onto the floor."[8]
Despite that observation, Judge Schapira granted the parties mutual decision-making concerning their children. This was recited in the parenting plan incorporated in the decree of dissolution and signed by the court.[9] In explaining her decision based upon her interpretation of RCW 26.09.191(1)(c), Judge Schapira stated:
My finding that, although there was a history of acts of domestic violence that they, as it is paired in the statute with a single act of an assault, grievous bodily harm, or fear of such harm, that, that is a modification of the history of the acts of domestic violence. That it isn't merely the history, but that it is the fear that is produced or the grievous bodily harm that the legislature is addressing but, that is the ill that is sought to be cured.[[10]]
On March 28, 1996, Judge Schapira signed a decree of dissolution[11] which incorporated the parenting plan by reference. The final order was approved on that date but actually signed on April 10, 1996.[12]
The parenting plan approved by Judge Schapira, with significant changes by strike-outs and interlineations, stated in part:

IV. DECISION MAKING[[13]]
4.1 DAY TO DAY DECISIONS.
Each parent shall make decisions regarding the day-to-day care and control of each child while the children are residing with that parent. Regardless of the allocation of decision making in this parenting plan, either parent may make emergency decisions affecting the health or safety of the children.
*1249 4.2 MAJOR DECISIONS.[[14]]
Major decision regarding each child shall be made as follows:

Education decisions: joint
Non-emergency health joint
 care decisions:
Religious upbringing: joint

4.3 RESTRICTIONS IN DECISION MAKING:[[15]]
Findings of Fact and Conclusions of Law:
Although there has been (a) a history of acts of domestic violence perpetrated by the father as referenced in Section VI below, and (b) conflict by both parties during the period of the separation between the parties during visitation exchanges, the purpose of RCW 26.09.187, to protect a parent who has fear of abuse or who fears of [sic] negotiating disputes about children, a protection which is not necessary in this case.
. . . .

VI. OTHER PROVISIONS[[16]]
There are the following other provisions:
Findings of Fact and Conclusions of Law:
The respondent, Daniel Caven, has engaged in acts of domestic violence, as defined in RCW 26.09.050, which occurred throughout the marriage and increased in number and intensity throughout the last two years of the marriage prior to the separation of the parties in January 1995.
The Court orders Mr. Caven to continue participate [sic] in the anger management and domestic violence treatment program, the particulars and conditions of which are outlined as follows:
. . . .

VIII. ORDER BY THE COURT[[17]]
It is ordered, adjudged and decreed that the parenting plan set forth above is adopted and approved as an order of this court.
On May 10, 1996, Respondent filed a notice of appeal to the Court of Appeals. The decision of the Court of Appeals is best summarized in the opening paragraph of the opinion dated July 21, 1997 (Judge Walter E. Webster writing):
[Respondent] appeal[ed] from the [trial] court's entry of a parenting plan. She argue[d] that the trial court erred in ordering joint decision-making after finding that her husband had engaged in a history of acts of domestic violence. The question presented is one of statutory interpretation: whether RCW 26.09.191(1) prohibits mutual decision-making whenever there is a history of acts of domestic violence or only when the violence causes grievous bodily injury or fear of such injury. We hold that the statute requires sole decision-making upon a finding of a history of acts of domestic violence regardless of whether those acts caused grievous bodily harm. Accordingly, we reverse.[[18]]
Petitioner then sought review by this Court, which we granted on May 5, 1998.

DISCUSSION
In matters affecting the welfare of children, such as parenting plans, the trial court has broad discretion,[19] and its decisions are reviewed only for abuse of discretion.[20] But issues of statutory construction are questions of law which this court reviews de novo.[21] In applying rules of statutory construction to the unambiguous language of a statute, "[t]he court must give words in a *1250 statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute."[22]
The current version of RCW 26.09.191(1) reads:
(1) The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (b) physical, sexual, or a pattern of emotional abuse of a child; or (c) a history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm.
RCW 26.50.010(1) and (2) reads:
(1) "Domestic Violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.
(2) "Family or household members" means spouses, former spouses, persons who have a child in common regardless of whether they have been married or have lived together at any time, adult persons related by blood or marriage, adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship, persons sixteen years of age or older with whom a respondent sixteen years of age or older has or has had a dating relationship, and persons who have a biological or legal parent-child relationship, including step-parents and stepchildren and grandparents and grandchildren.
A plain and ordinary reading of the language in RCW 26.09.191(1)(c) leads to the conclusion that the two phrases should be interpreted as alternatives to each other and not as modifiers. The words "a history of acts of domestic violence" and "an assault or sexual assault which causes grievous bodily harm or the fear of such harm" are separated by the word "or" which grammatically is a coordinating particle signifying an alternative.
Reviewing legislative history, as suggested by Petitioner, is not warranted in this case because the language of RCW 26.09.191(1)(c) is clear and unambiguous.[23] Review of changes to the statute since its enactment reinforces a conclusion that the two phrases do not modify each other. The earlier 1987 version of RCW 26.09.191(1)(c) included the words "a history of acts of domestic violence as defined in RCW 26.50.010(1) or an act of domestic violence which rises to the level of a felony." In that 1987 version of the statute there were two independent circumstances under which the court could grant sole decision-making in a parenting plan. The two phrases, "a history of acts of domestic violence" and "an act of domestic violence which rises to the level of a felony," separated by the word "or," did not modify each other, but were stated as alternatives.
In 1989, the Legislature amended RCW 26.09.191(1)(c) to its present form, replacing the phrase "an act of domestic violence which rises to the level of a felony" with the phrase "an assault or sexual assault which causes grievous bodily harm or the fear of such harm." In amending the statute, the Legislature continued language indicating its intent that the amended phrases, like the original phrases, operate as alternatives through use of the word "or" connecting the two.
Under its reading of RCW 26.09.191(1)(c) in this case, the Court of Appeals was correct in concluding that the discretion of the trial *1251 court in determining parental decision-making is restricted by circumstances stated in the statute.
Petitioner cites cases from Iowa,[24] Louisiana[25] and Missouri[26] to support his assertion that the trial court had discretion to grant mutual decision-making under the circumstances in this case. The language of RCW 26.09.191(1)(c) is not the same as, nor even reasonably comparable to, the language of the Iowa,[27] Louisiana[28] and Missouri[29] statutes underlying those decisions. Those cases therefore have no value in construing the meaning of RCW 26.09.191(1)(c).
Petitioner asserts that "a history of acts of domestic violence" must be "defined in a way that acknowledges that it is ... [a] fear-based family dynamic"[30] where the court has discretion to grant mutual decision-making if there is absence of that fear. That is not correct. The clear and unambiguous language of RCW 26.09.191(1)(c) does not lend itself to such an interpretation.
Petitioner voices concerns that if the Court of Appeals' interpretation of the statute is adopted then "a parent wishing to restrict the other parent's relationship with their child would be given an incentive to levy false accusations of domestic violence."[31] Actually, RCW 26.09.191(1)(c) requires a finding by the court that there is "a history of acts of domestic violence." Mere accusations, without proof, are not sufficient to invoke the restrictions under the statute.
In his Supplemental Brief, Petitioner cites In re Marriage of Stern,[32]Callan v. Callan,[33]Shockley v. Travelers Ins. Co.,[34] and Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist.[35] The first two cases stand for the "well established [rule] that the interpretation or construction of findings of fact and conclusions of law presents a question of law for the court."[36] The third and fourth cases stand for the rule that "when the language of findings ... support[s] the judgment, though also susceptible of another construction, the findings will be given that meaning which sustains the judgment, rather than one which would defeat it."[37] These cases are not directly relevant to statutory construction, although the trial court's findings of fact and conclusions of law, incorporating the parenting plan, is the critical point of reference in this case.
We conclude that the Superior Court incorrectly reached its conclusions and that the Court of Appeals was correct in reversing the trial court.

SUMMARY AND CONCLUSIONS
The decision of the Court of Appeals, Division I, correctly reversed the trial court which incorrectly interpreted RCW 26.09.191(1)(c), resulting in that court erroneously granting the parties mutual decision-making. The trial court usually has broad discretion in determining matters relating to the welfare of children, but in matters of statutory construction this Court exercises de novo review.
*1252 The words of an unambiguous statute must be given their plain and ordinary meaning unless a contrary intent is evidenced in the statute. In RCW 26.09.191(1)(c), the phrase "an assault or sexual assault which causes grievous bodily harm or the fear of such harm" does not modify the preceding phrase "a history of acts of domestic violence." The sentence containing the two phrases separates them with the disjunctive "or" which grammatically indicates that the phrases are alternatives. A review of prior amendments to RCW 26.09.191(1)(c) also supports the conclusion that the phrases were meant to be interpreted as alternatives, and not as modifiers of each other.
We affirm the decision of the Court of Appeals, Division I, which reversed and remanded to the King County Superior Court its ruling that under RCW 26.09.191(1)(c) the phrase "a history of acts of domestic violence" is modified by the phrase "an assault or sexual assault which causes grievous bodily harm or the fear of such harm" and its ruling granting the parties mutual decision-making based upon the trial court's erroneous interpretation of RCW 26.09.191(1)(c).
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] (Emphasis added.)
[2] The pleadings variously refer to Respondent as "Carol Ann M. Caven" and "CarolAnn M. Caven." She indicates her name is "CarolAnn M. Caven."
[3] Clerk's Papers at 8.
[4] Id.
[5] Id. at 10.
[6] Id. at 7.
[7] Id.
[8] Id. at 62.
[9] Id. at 25, 38-47 and 74.
[10] Id. at 77.
[11] Id. at 15-27.
[12] Id. at 25 and 38-47.
[13] Id. at 43.
[14] Id.
[15] Id. at 43.
[16] Id. at 44-45.
[17] Id. at 46.
[18] In re the Marriage of C.M.C., and D.W.C., 87 Wash.App. 84, 86, 940 P.2d 669 (1997).
[19] In re Marriage of Cabalquinto, 100 Wash.2d 325, 327, 669 P.2d 886 (1983); Schuster v. Schuster, 90 Wash.2d 626, 632, 585 P.2d 130 (1978).
[20] In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629, 632 (1993).
[21] Dioxin/Organochlorine v. Pollution Control Hearings Bd., 131 Wash.2d 345, 352, 932 P.2d 158 (1997).
[22] Erection Co. v. Department of Labor & Industries, 121 Wash.2d 513, 518, 852 P.2d 288 (1993); In re Estate of Little, 106 Wash.2d 269, 283, 721 P.2d 950 (1986).
[23] Multicare Med. Ctr. v. Department of Soc. & Health Servs., 114 Wash.2d 572, 582, 790 P.2d 124 (1990); In re Eaton, 110 Wash.2d 892, 898, 757 P.2d 961 (1988).
[24] In re Marriage of Forbes, 570 N.W.2d 757 (Iowa 1997).
[25] Simmons v. Simmons, 649 So.2d 799 (La.Ct. App.1995).
[26] Hamilton v. Hamilton, 886 S.W.2d 711 (Mo. Ct.App.1994).
[27] Iowa Code Ann. § 598.41.
[28] La.Rev.Stat. Ann. § 9:364, subd. A.
[29] Mo. Ann. Stat. § 452.375, subd.2(5).
[30] Pet. for Review at 13; see also Supplemental Br. of Pet'r at 14.
[31] Pet. for Review at 12; see also Supplemental Br. of Pet'r at 14.
[32] 57 Wash.App. 707, 789 P.2d 807 (1990).
[33] 2 Wash.App. 446, 468 P.2d 456 (1970).
[34] 17 Wash.2d 736, 137 P.2d 117 (1943).
[35] 45 Wash.App. 123, 724 P.2d 1083 (1986).
[36] In re Marriage of Stern, 57 Wash.App. 707, 712, 789 P.2d 807 (1990) (citing Callan v. Callan, 2 Wash.App. 446, 448, 468 P.2d 456 (1970)).
[37] Shockley v. Travelers Ins. Co., 17 Wash.2d 736, 743, 137 P.2d 117 (1943); Lincoln Shiloh Assocs., Ltd. v. Mukilteo Water Dist., 45 Wash.App. 123, 131, 724 P.2d 1083 (1986).