IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 35685-0-III |
| | ) | |
| JENNY LYNN VECA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| AARON KEYES PRICHARD, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, A.C.J. — Jenny Lynn Veca appeals several aspects of a final parenting plan, issued in connection with Ms. Veca's petition to dissolve her marriage to Aaron Keyes Prichard. We reject the majority of Ms. Veca's claims, but remand on two issues. The trial court shall amend the parenting plan as follows: (1) conform the Skype call schedule (Section 14(A)) to the trial court's oral ruling, and (2) reallocate travel expenses (Section 12) according to the parties' basic child support obligations. The trial court's orders on review are otherwise affirmed.

FACTS

Jenny Lynn Veca and Aaron Keyes Prichard were married in 2004 and have two children. The parties' relationship has been tumultuous. Over the years, Ms. Veca has

made numerous domestic violence allegations against Mr. Prichard. None of these allegations have resulted in criminal convictions for assault or related conduct.

In 2014, Ms. Veca filed for dissolution of the marriage in Benton County Superior Court. During the pendency of the proceedings, Ms. Veca moved to Nevada with the parties' children. Trial was held in 2017.

The trial process was long and contentious. At the end of the proceedings, the trial court found Ms. Veca not credible. The court disagreed with Ms. Veca's allegations that Mr. Prichard had a history of domestic violence. Thus, the court did not restrict Mr. Prichard's decision-making authority or residential time pursuant to RCW 26.09.191(1) and (2). The court expressed displeasure with Ms. Veca's unilateral decision to move the children to Nevada. The court also found Ms. Veca had used conflict in ways that endangered the psychological development of her children. Nevertheless, the trial court determined Ms. Veca was a good parent and that the children would suffer if removed from her primary care. The court issued a detailed parenting plan, addressing the specifics of the children's residential schedules along with an apportionment of travel expenses. The trial court warned that the parenting plan could be subject to modification based on future misconduct.

Ms. Veca appeals.

No. 35685-0-III
*In re Marriage of Veca & Prichard*

ANALYSIS

Ms. Veca assigns several errors to the trial court's parenting plan. Our review is governed by the abuse of discretion standard. *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). Because the majority of Ms. Veca's claims are factual, our review is focused on the trial record, including the transcribed report of proceedings. However, much of the trial proceedings has not been included in the record on appeal. The only trial testimony before us comes from Ms. Veca and Mr. Prichard. As the appellant, Ms. Veca was responsible for arranging transcription of those portions of the trial court proceedings necessary to present the issues on appeal. RAP 9.2(b). Because many of the trial court's findings appear to have been based on the testimony of witnesses other than Ms. Veca and Mr. Prichard, our review of the trial court's findings is especially deferential.

*Domestic violence limitations—RCW 26.09.191*

A trial court is required to impose restrictions on decision-making and residential time when a parent is found to have a history of domestic violence. RCW 26.09.191(1)-(2). While the statute governing domestic violence restrictions is written in mandatory terms, the trial court retains "discretion to determine whether the evidence presented meets the requirements of" the statute. *In re Parenting & Support of L.H.*, 198 Wn. App.

3

190, 194, 391 P.3d 490 (2016). "Mere accusations, without proof, are not sufficient to invoke the restrictions under the statute." *Caven*, 136 Wn.2d at 809.

Ms. Veca recognizes the applicability of a trial court's fact-finding authority under RCW 26.09.191. Nevertheless, she argues that the trial court was required to make a finding of domestic violence against Mr. Prichard based on the existence of prior no-contact orders that had been issued against Mr. Prichard.[1]

Ms. Veca's arguments appear to rest on a theory of collateral estoppel. Collateral estoppel, or issue preclusion, bars relitigation of an issue that was previously decided between the two parties to a case during a prior court proceeding. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). A party seeking application of collateral estoppel must establish that:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

---

[1] Ms. Veca also claims that the court should have relied on a prior finding of domestic violence by California's Child Welfare Services (CWS). The record on review contains no such formal finding. Instead, the document cited by Ms. Veca is a "Safety Plan" with a handwritten note stating, "DV exists between the parents. Fa[ther] is violent towards the mother and the police has [sic] been called." Clerk's Papers at 479. The Safety Plan contains a notice that it is designed to ensure safety "while CWS completes this investigation." *Id*. The document simply does not represent a formal finding of domestic violence.

4

*Id*. at 307.  The applicability of issue preclusion is a legal matter reviewed de novo.
*Id*. at 305.

Ms. Veca cites no authority indicating collateral estoppel applies in the current context.  At least with respect to restrictions on residential time under RCW 26.09.191(2), the legislature has indicated that collateral estoppel does not apply to prior protection orders issued between the parties.  RCW 26.09.191(2)(n).  Instead, "[t]he weight given to the existence of a protection order issued . . . is within the discretion of the court."  *Id*.

The legislature has not indicated whether collateral estoppel should apply to prior protection orders in the decisional context under RCW 26.09.191(1).  Nevertheless, we find collateral estoppel does not apply under the specific facts of this case.  Several of the no-contact orders obtained by Ms. Veca were issued on a temporary, ex parte basis.  As such, they do not meet elements (2) and (4) of collateral estoppel.  Only two of the no-contact orders were issued after final hearings: a California order dated April 12, 2012, and a Benton County District Court order dated October 28, 2015.  Both orders fail to meet the criteria for collateral estoppel.  With respect to the California order, the record contains no information regarding the basis for the order or the court's findings.[2] Meanwhile, the Benton County order was issued as part of a criminal judgment that did

---

[2] The order does note that Mr. Prichard was not present for the final hearing.

not involve a conviction for assault or other violent conduct. Because the record fails to show that either the California order or the Benton County order was based on a finding that Mr. Prichard had committed an act of domestic violence as defined in RCW 26.50.010(3), neither has preclusive effect in the current context.

Because the prior protection orders did not have preclusive effect, the trial court retained the discretion to weigh the totality of the evidence, including the prior orders, in determining whether Mr. Prichard had a history of domestic violence. That is what happened here. The trial court listened to testimony from the parties and other witnesses and ultimately concluded Ms. Veca's allegations of domestic violence were not credible. This decision was well within the trial court's authority and is not vulnerable to revision on appeal.

*Drug use restrictions—RCW 26.09.191(3)(c)*

Ms. Veca claims the trial court should have limited Mr. Prichard's residential time with the children under RCW 26.09.191(3)(c) based his long-term use of marijuana. We disagree with this contention. Residential limitations based on a history of substance abuse are not mandatory. RCW 26.09.191(3(c). The trial court considered the evidence and found that Mr. Prichard's marijuana use did not affect his ability to parent his children. Based on this finding, no restrictions on residential time were warranted.

No. 35685-0-III
*In re Marriage of Veca & Prichard*

*Allocation of Jewish holidays*

Ms. Veca argues that the trial court abused its discretion when it refused to allocate Jewish holidays. We decline to review this issue under RAP 2.5. The record before us contains no request by Ms. Veca for Jewish holidays. In fact, she never clearly identified herself as Jewish. From the briefing, it appears Mr. Prichard has no objection to allowing Ms. Veca residential time during Jewish holidays. If Ms. Veca wishes to ensure that the children are with her for Jewish holidays she can file a motion to modify and propose a procedure for determining annual allocation of Jewish holidays. *See* RCW 26.09.260(2)(a).

*Skype call schedule*

During its oral ruling, the trial court ordered that the parties' Skype calls would continue to take place according to the current schedule and frequency. The schedule in question was Tuesdays, Thursdays, and Sundays at *7:00 p.m.* However, in the written final parenting plan, the Skype schedule was changed to "Tuesdays, Thursdays, and Sundays at *5:00 p.m.*" Clerk's Papers (CP) at 959 (emphasis added). The record contains no explanation for this discrepancy. Ms. Veca claims the change from 7:00 p.m. to 5:00 p.m. causes a hardship because it interferes with the children's after school activities. Because the change in Skype call time appears to be an unintentional

7

scrivener's error, we grant Ms. Veca her requested relief with respect to the timing of the Skype calls.

Ms. Veca also points out that the original Skype call schedule did not require the children to be in a particular location at the time of the calls. However, the final parenting plan requires the children to be "at home." *Id.* During the oral ruling, the court indicated that the Skype calls should take place at home, unless the parties agree otherwise. Given Ms. Veca's representation that the family needs flexibility regarding the location of Skype calls and Mr. Prichard's willingness to provide accommodation, we find it appropriate that the final parenting plan should track the court's oral ruling. Thus, we grant Ms. Veca partial relief on this issue.

Based on the foregoing, the Skype call schedule, as set forth in Section 14(A) of the final parenting plan shall be amended to read as follows:

> Except as provided below, the nonresidential parent shall be entitled to have Skype calls with the children on Tuesdays, Thursdays, and Sundays at 7:00 p.m. Pacific time.[3] The residential parent shall have the children at home for these calls, unless otherwise agreed to by the nonresidential parent, and the nonresidential parent shall initiate the Skype calls.

---

[3] The final parenting plan specified that calls should take place according to Pacific Standard Time. To eliminate confusion during daylight savings time, the order should simply specify Pacific time. Both Washington and Nevada are on Pacific time and both alternate between Pacific Standard and Pacific Daylight Time.

No. 35685-0-III
*In re Marriage of Veca & Prichard*

*Substantial change of circumstances*

Ms. Veca argues Sections 14(B) and (E) of the final parenting plan are improper

because they make preemptive findings about what will constitute a substantial change

of circumstances should Mr. Prichard file for modification of the parenting plan under

RCW 26.09.260.

> Section 14(B) of the parenting plan states:
>
> Neither party shall speak negatively about the other parent in front of or
> around the minor children.  Violation of this provision shall be considered a
> "substantial change of circumstances."

CP at 959.

> Section 14(E) of the parenting plan states:
>
> Mother must not interfere with Father's visitation by making false reports to
> law enforcement, CPS, or to mandatory reporters, by filing No Contact
> Orders based on false claims or motions based on false claims. . . .
> Violation of this provision shall be considered a "substantial change of
> circumstances."

*Id*.

A substantial change of circumstances is a necessary, though not sufficient,

condition for modifying a parenting plan.  Even when a nonresidential parent is able to

prove a substantial change of circumstances, a court retains discretion to keep an existing

parenting plan in place.  This is because "changes in residences are highly disruptive to

children." *In re Parentage of Schroeder*, 106 Wn. App. 343, 350, 22 P.3d 1280 (2001).

9

A substantial change of circumstances will result in an order changing custody only if doing so is in the best interests of the child. RCW 26.09.260(1).

Our case law has long recognized substantial changes of circumstances when one parent tries to turn a child against the other parent or otherwise interferes with visitation. *Schroeder*, 106 Wn. App. at 350; *In re Marriage of Velickoff*, 95 Wn. App. 346, 355, 968 P.2d 20 (1998). Such behavior raises custody concerns because it can be detrimental to a child's "physical, mental, or emotional health." RCW 26.09.260(2)(c). When a parent interferes with visitation or otherwise tries to turn a child against the other parent, contempt sanctions are possible. *Schroeder*, 106 Wn. App. at 350. In addition, a change of residential status can be ordered if the parent's conduct is deemed harmful to the child. *Id.*; *Velickoff*, 95 Wn. App. at 355.

As written, Sections 14(B) and 14(E) of the parenting plan do not alter the procedure for filing for modification; nor do they preemptively decide whether certain conduct will result in changes to the residential placement provisions of the plan. Instead, the aforementioned provisions simply point out behaviors that our case law has recognized as constituting a substantial change of circumstances. *See, e.g.*, *Velikoff*, 95 Wn. App. at 355 (Interference with telephone visitation and false claims of abuse justified a modification of residential status.). Given Ms. Veca's demonstrated difficulties in understanding court orders and expectations, it was not an abuse of

discretion for the trial court's parenting plan to include detailed warnings about the types

of behaviors that could result in a modification hearing based on a substantial change of

circumstances. We are unpersuaded by Ms. Veca's challenges to Sections 14(B) and

14(E) of the parenting plan.

*Mental health provider information & hearing transcript requirement*

Section 14(H) of the parenting plan sets forth mental health treatment expectations

for both Ms. Veca and Mr. Prichard. It states as follows:

> Mother and Father must engage in and remain in full compliance with all
> treatment recommendations of all present and future mental health
> providers and counsellors. Mother and Father must provide a transcript of
> the proceedings held on September 25, 2017 to their respective present and
> future mental health providers and counsellors, and to the children's present
> and future mental health providers and counsellors. Each party shall have
> the right to submit the transcript directly to any provider, but may not
> otherwise contact the others' treatment providers. The parties must also
> provide the other with notice of any change of mental health provider or
> counsellor for themselves and the children.

CP at 959.

Ms. Veca contends the requirements of Section 14(H) are improper because they

impinge upon the parties' mental health treatment and the doctor-patient relationship.

We find no abuse of discretion.

In crafting a parenting plan, the court's primary concern is the best interests of

the parties' children. RCW 26.09.002. While the trial court decided the children could

11

be safely placed in Ms. Veca's primary care, this determination was tenuous. The court made findings against Ms. Veca that could have restricted her residential time with the children pursuant to RCW 26.09.191(3)(e)-(f). At one point during its oral ruling, the court commented that the parties' children were "traumatized" by Ms. Veca's "response and reaction" to Mr. Prichard's interaction with the children. CP at 1061. Given the court's concerns regarding Ms. Veca's behavior, there were ample reasons to order mental health treatment as a condition of Ms. Veca's designation as residential parent. RCW 26.09.191(3)(e)-(f).

Contrary to Ms. Veca's contentions, the trial court's directives did not impinge upon the parties' rights to privacy or privileged communications with their health care providers. Neither party is entitled to the other's mental health records. Nor are they permitted to interfere with each other's mental health treatment. They are simply entitled to be notified as to the identity of the other party's mental health provider. This provides some assurance of compliance with the court's orders. In addition, the court has not inserted itself into the relationships between the parties and their mental health providers by directing that a transcript of the court's oral ruling be provided to the mental health providers. The court has simply ordered that the providers be given additional information, to use or not use as they see fit, in order to address the mental health issues that may be at the root of the parties' recurrent disputes.

12

No. 35685-0-III
*In re Marriage of Veca & Prichard*

*Allocation of travel expenses*

Ms. Veca contends the trial court abused its discretion by failing to proportionally allocate expenses related to the children's long-distance travel expenses. According to Ms. Veca, the current allocation leaves her with the bulk of the travel expenses necessary for long-distance visitation, even though the parties' proportional child support obligations were nearly equal.

RCW 26.19.080(3) requires that visitation-related transportation costs be shared by the parents in the same proportion as their basic child support obligations. While the trial court has discretion to determine whether travel expenses are necessary and reasonable for visitation purposes, a court cannot avoid the apportionment mandate unless there are grounds to deviate from the basic support obligation. *In re Paternity of Hewitt*, 98 Wn. App. 85, 89, 988 P.2d 496 (1999).

Ms. Veca's challenge to the allocation of transportation expenses is well taken. On remand, the trial court shall reallocate long-distance travel expenses in the same proportion as the basic child support obligation.

*Request for remand to new judge*

Ms. Veca requests that this case be reassigned to a different trial judge on remand based on allegations of impartiality. Reassignment is a disfavored appellate remedy. *See State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). A party claiming bias

13

No. 35685-0-III
*In re Marriage of Veca & Prichard*

or prejudice must support the claim with an adequate record. *State v. Dominguez*, 81 Wn.

App. 325, 328-29, 914 P.2d 141 (1996).

Ms. Veca has not sustained her burden of proving bias or the appearance of bias.

As previously stated, the appellate record does not include the entire trial transcript.

Without a full transcript, we cannot compare the court's interactions with Ms. Veca to

that of other witnesses. Nor can we fairly assess the impact of other witnesses' testimony

on the trial court's assessment of Ms. Veca's credibility and demeanor.

From the limited record that has been provided, it is apparent that the trial judge

did grow frustrated with Ms. Veca over the course of her testimony. Ms. Veca was a

difficult witness. Her testimony was often nonresponsive and included disparaging

editorial comments.[4] Those comments included allegations of impropriety against several

---

[4] Some examples: When asked whether Mr. Prichard had a healthy relationship with Ms. Veca's oldest son, Ms. Veca engaged in a disjointed story about how her oldest son almost lost his leg in a boat accident, which led to Mr. Prichard's mother sending e-mails with negative commentary about Ms. Veca's son, which then created paranoia in Mr. Prichard, and ultimately resulted in Mr. Prichard choking Ms. Veca. *See* 1 Report of Proceedings (RP) (Aug. 11, 2017) at 109-11. When asked if Mr. Prichard had ever reported Ms. Veca to the police for assault, Ms. Veca stated, "Probably. I don't know for sure, but most likely I am sure he has." 2 RP (Aug. 15, 2017) at 286. When asked about partners she had prior to Mr. Prichard, Ms. Veca tried to avoid answering, stating, "I just know that you are both going to turn around and go harass anybody I name." *Id.* at 329. When asked whether her own marijuana use ever caused tensions in her relationship with Mr. Prichard, Ms. Veca started talking about Mr. Prichard's marijuana use and how it caused him to lose jobs and that he could not pass a drug test. *See* 3 RP (Aug. 21, 2017) at 585.

14

members of the local superior court bench.[5]  During cross-examination, Ms. Veca was

evasive and she frequently refused to answer questions altogether.[6]  The trial court

repeatedly admonished Ms. Veca for interrupting the court and for straying off topic,

yet Ms. Veca failed to change her conduct.  The court eventually resorted to contempt

fines in an effort to address Ms. Veca's failures to follow the court's instructions.

While the trial court's frustration was obvious, we decline to criticize the court's

efforts at addressing Ms. Veca's courtroom conduct.  During a bench trial, a trial judge

is tasked with managing the courtroom and also forming an opinion about the parties and

---

[5] Some examples: When asked about a failed attempt by her current partner to obtain a restraining order against Mr. Prichard, Ms. Veca speculated that the judge (a Benton County Superior Court judge other than the trial judge here) denied the order because he was friendly with Mr. Prichard's attorney.  *See* 3 RP (Aug. 21, 2017) at 597-98.  At another point in her testimony, Ms. Veca claimed that yet another Benton County Superior Court judge had improperly placed her partner's child in the custody of the child's mother because the judge and the mother were friends and "one hand washes the other sometimes here."  2 RP (Aug. 15, 2017) at 383.  Later, Ms. Veca ranted against Mr. Prichard's attorney and claimed the attorney called Ms. Veca "the C word in open court" and the court commissioner "just let [him] do it."  *Id*. at 393-94.

[6] Some examples:  When asked if she believed Mr. Prichard had sexually assaulted her son, Ms. Veca stated, "I am not going to be baited into this.  It's not a question that you are asking me.  I am not—you're—I am just not going to do it."  2 RP (Aug. 14, 2017) at 270-71.  When the court reminded Ms. Veca of her obligations as a witness, Ms. Veca changed course and stated she did not "understand what [Mr. Prichard's counsel] is saying."  *Id*.  Later in the proceedings Ms. Veca stated she wanted to "plead the Fifth" in order to avoid questions from Mr. Prichard's attorney.  2 RP (Aug. 15, 2017) at 284.  When asked by counsel if Mr. Prichard had injured the parties' daughter, Ms. Veca said, "I am not going to answer that.  I am just not going to be led into that."  3 RP (Aug. 21, 2017) at 525.

their credibility. A judge does not render himself or herself incapable of handling a case on remand simply by performing these duties, even if, in hindsight, one might quibble with the court's choice of words. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

In the end, the trial judge showed he was fully capable of rendering a fair judgment. During the court's oral ruling, the judge recognized that both Ms. Veca and Mr. Prichard had engaged in poor conduct. But rather than reward or punish either party, the court made clear the proper focus was the best interests of the children. The final result was that Ms. Veca was deemed the prevailing party and the children were placed in her primary care. In making this placement decision, the court commended Ms. Veca on doing "a great job caring for the kids." 6 Report of Proceedings (Sept. 25, 2017) at 1059. Given the totality of the circumstances before this court, we do not find improper bias or the appearance of bias.

## CONCLUSION

The matter is remanded with instructions for the trial court to amend the Skype call schedule and apportionment of travel expenses in the final parenting plan as set forth in this opinion. The trial court's orders on review are otherwise affirmed.

No. 35685-0-III
*In re Marriage of Veca & Prichard*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, ACJ
Pennell, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

17